IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM McGHEE and CRYSTAL KERIN, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TOMS KING, LLC. <br><br> Defendant. | CIVIL ACTION <br><br> Case No.  2:19-cv-1470 <br><br> **COMPLAINT – COLLECTIVE ACTION** <br><br> JURY TRIAL DEMANDED |

## COLLECTIVE ACTION COMPLAINT

Plaintiffs, William McGhee ("McGhee") and Crystal Kerin ("Kerin") (collectively, ("Plaintiffs"), file this Collective Action Complaint against Defendant, TOMS King, LLC. ("Defendant" or "TOMS King"), seeking all relief available under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), on behalf of themselves and all current and former "Restaurant Assistant Managers" ("RAMs") and "Restaurant General Managers-in-Training" ("RGMITs"), however variously titled. Plaintiffs also seek all relief available to them individually under the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101 *et seq.* (the "PMWA"). The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## NATURE OF THE ACTION

1. Plaintiffs bring this action on behalf of themselves and similarly situated current and former RAMs and RGMITs to recover unpaid overtime pursuant to the FLSA. TOMS King violated the FLSA by failing to pay its RAMs and RGMITs overtime compensation for the hours

they worked over forty (40) in one or more work weeks because TOMS King classifies them as exempt from overtime.

2. Plaintiffs also bring this action on behalf of themselves to recover unpaid overtime pursuant to the PMWA. TOMS King violated the PMWA by failing to pay Plaintiffs overtime compensation for all hours they worked over forty (40) in one or more work weeks because TOMS King classified them as exempt from overtime.

3. TOMS King employs RAMs and RGMITs in more than 130 franchise "Burger King" restaurants located in Illinois, North Carolina, Ohio, Pennsylvania, and Virginia. Although TOMS King considers its RAMs and RGMITs to be "managers," RAMs and RGMITs are not responsible for true management functions. To the contrary, RAMs and RGMITs spend the vast majority of their time performing the same duties as non-exempt employees, including serving customers, ringing customers up on the cash register, preparing food, working the drive-thru, stocking, counting inventory, and cleaning the restaurant.

4. RAMs report to Restaurant General Managers who, in turn, report to district and other supervisory personnel. Restaurant General Managers are the highest level of management in TOMS King's restaurants.

5. RGMITs also report to Restaurant General Managers. RGMITs participate in a several week training program in which their primary duty is learning the operations of TOMS King's restaurants and how to perform the functions of a Restaurant General Manager. Both RAMs and RGMITs are classified by TOMS King as exempt from overtime, even though their duties do not fall within any of the exemptions under federal or state overtime laws.

6. As alleged herein, Plaintiffs and all other similarly situated RAMs and RGMITs were required to work more than forty (40) hours in a workweek while employed by TOMS King

in order to complete their job duties. However, in accordance with TOMS King's policy, pattern, and/or practice, they were misclassified as exempt from overtime compensation and were not paid at the mandated rate of time-and-one-half for all hours worked in excess of forty (40) in a work week.

7. Pursuant to 29 U.S.C. § 216(b), Plaintiff McGhee bring this action on behalf of himself and all persons who are or were formerly employed by TOMS King in the United States during the relevant time period as RAMs, and individuals holding comparable salaried positions with different titles (the "RAM Collective").

8. Pursuant to 29 U.S.C. § 216(b), Plaintiff Kerin bring this action on behalf of herself and all persons who are or were formerly employed by TOMS King in the United States during the relevant time period as RGMITs, and individuals holding comparable salaried positions with different titles (the "RGMIT Collective").

9. TOMS King's systematic failure and refusal to pay Plaintiffs and all other similarly situated RAMs and RGMITs for all hours worked over forty (40) in a workweek violates the FLSA.

## THE PARTIES

*Plaintiff William McGhee*

10. McGhee resides in McKees Rocks, Pennsylvania (Allegheny County). Between approximately March 2019 and May 2019, McGhee was employed by TOMS King as a RAM at a Burger King restaurant located in Pittsburgh, Pennsylvania (Allegheny County). Prior this time, and beginning in approximately July 2018, McGhee worked as an hourly-paid Shift Manager with TOMS King.

11. Throughout his employment as a RAM with TOMS King, McGhee was scheduled

to work at least 50 hours each week, though he worked more. On average, during each week of his employment with TOMS King, McGhee worked approximately 60 to 65 hours, including during the weeks leading up to, and of, St. Patrick's Day and Easter 2019.

12. McGhee spent the vast majority of his time performing the same duties as non-exempt employees, including serving customers, ringing customers up on the cash register, preparing food, working the drive-thru, stocking, counting inventory, and cleaning the restaurant. McGhee performed the same type of work when he was employed by Defendant as a Shift Manager, though in that role he was paid overtime compensation for working more than forty (40) hours in a workweek.

13. The work McGhee performed was at the direction, and for the benefit, of TOMS King.

14. Pursuant to TOMS King's policy, pattern or practice of classifying RAMs as exempt from overtime, McGhee was not paid premium overtime compensation for all hours worked over forty (40) in a work week.

15. Plaintiff McGhee has consented to join this action. *See* Exhibit A.

***Plaintiff Crystal Kerin***

16. Kerin resides in Heidelburg, Pennsylvania (Allegheny County). Between approximately September 2017 and December 2017, Kerin was employed by TOMS King as an RGMIT. During this time, she participated in TOMS King's RGMIT training program, which took place at two Burger King restaurants located in Robinson Township and Pittsburgh, Pennsylvania (Allegheny County).

17. Throughout her employment as an RGMIT with TOMS King, Kerin was scheduled to work at least 50 hours each week, though she worked more. On average, during each week of

her employment with TOMS King, Kerin worked approximately 55 to 60 hours, including during the weeks leading up to, and of, Thanksgiving in 2017.

18. Kerin spent the vast majority of her time performing the same duties as non-exempt employees, including serving customers, ringing customers up on the cash register, preparing food, working the drive-thru, stocking, counting inventory, and cleaning the restaurant.

19. The work Kerin performed was at the direction, and for the benefit, of TOMS King.

20. Pursuant to TOMS King's policy, pattern or practice of classifying RGMITs as exempt from overtime, Kerin was not paid premium overtime compensation for all hours worked over forty (40) in a work week.

21. Plaintiff Kerin has consented to join this action. *See* Exhibit B.

***Defendant TOMS King, LLC.***

22. TOMS King, LLC is a corporation with its principal place of business in Palatine, Illinois.

23. TOMS King owns and operates approximately 130 franchise "Burger King" restaurants. *See* https://www.tomsking.com/about.html (last accessed on October 31, 2019).

24. At all relevant times, TOMS King employed or acted in the interest of an employer towards Plaintiffs and other similarly situated current and former RAMs and RGMITs and, among other things, maintained control, oversight and direction over Plaintiffs and other RAMs and RGMITs, including with respect to timekeeping, payroll and other employment practices that applied to them.

25. TOMS King applies the same employment policies, practices, and procedures to all RAMs and RGMITs nationwide.

26. TOMS King is a covered employer within the meaning of the FLSA because,

among other things, it employs individuals, including Plaintiffs, who are engaged in interstate commerce or in the production of goods for interstate commerce or engaged in handling, receiving, selling, or otherwise working on goods or material that have been moved in or produced for interstate commerce.

27. At all relevant time, TOMS King has had gross revenues exceeding $500,000.00.

## JURISDICTION AND VENUE

28. This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1332, 1337, and 29 U.S.C. § 216(b).

29. In addition, the Court has supplemental jurisdiction over Plaintiffs' PMWA claims pursuant to 28 U.S.C. § 1367.

30. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

31. TOMS King is subject to personal jurisdiction in Pennsylvania.

32. Venue is proper in the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) since a substantial part of the events or omissions giving rise to the claims in this Collective Action Complaint occurred within this District and because Plaintiffs reside in this District.

## GENERAL FACTUAL ALLEGATIONS

33. TOMS King is a private Illinois corporation, with its corporate headquarters in Palatine, Illinois. According to its website, TOMS King is an independent franchisee of the Burger King Corporation and "owns and operates over 130 BURGER KING restaurants across Illinois, Ohio, North Carolina, Pennsylvania, and Virginia ..." *See* http://www.tomsking.com/about.html (last accessed on October 31, 2019).

34. TOMS King is "one of the Top 10 largest BURGER KING franchisees." *Id*. It employs approximately 4,000 "team members," (*id.*), of which several hundred are believed to be RAMs and RGMITs.

35. TOMS King maintains strict control, oversight, and discretion over the operation of its restaurants, including its employment practices with respect to Plaintiffs and the members of the putative collectives.

36. Plaintiffs' and the members' of the putative collectives work as RAMs and RGMITs was performed in the normal course of TOMS King's business and was integrated into it.

37. Consistent with TOMS King's policy, pattern and/or practice, Plaintiffs and the members of the putative collectives worked in excess of forty (40) hours per workweek without being paid overtime compensation. For example, and upon information and belief, RAMs and RGMITs are scheduled to work at least 50 hours each workweek (five 10-hour shifts). However, RAMs and RGMITs routinely work more hours.

38. All of the work that Plaintiffs and the members of the putative collectives performed has been assigned by TOMS King, who is aware of the work they performed. This work required little skill and no capital investment. Nor did it include managerial responsibilities, or the exercise of meaningful independent judgment and discretion.

39. Pursuant to a centralized, company-wide policy, pattern and/or practice, TOMS King classifies all RAMs and RGMITs as exempt from the overtime provisions of the FLSA and PMWA.

40. The primary job duties of Plaintiffs and the members of the putative collectives did not include hiring, firing, disciplining, or directing the work of other employees.

41. The primary job duties of Plaintiffs and the members of the putative collectives did not materially differ from the job duties of non-exempt hourly paid employees.

42. The primary job duties of Plaintiffs and the members of the putative collectives did not include the exercise of meaningful independent discretion with respect to their duties.

43. The primary job duties of Plaintiffs and the members of the putative collectives were manual and/or clerical in nature. The performance of manual and/or clerical labor occupied the majority of the working hours of Plaintiffs and the members of the putative collectives.

44. Plaintiffs and the members of the putative collectives are similarly situated in that they have substantially similar job duties and are subject to TOMS King's common compensation policies, patterns, and/or practices.

45. Upon information and belief, TOMS King did not perform a person-by-person analysis of Plaintiffs' and the members' of the putative collectives job duties when making the decision to classify RAMs and RGMITs as exempt from overtime under the FLSA and PMWA.

46. Due to the foregoing, TOMS King's failure to pay overtime wages for work performed by Plaintiffs and the members of the putative collectives in excess of forty (40) hours per week was willful.

47. The work performed by Plaintiffs and the members of the putative collectives constitutes compensable work time under the FLSA and PMWA and was not preliminary, postliminary or *de minimus*.

48. TOMS King's unlawful conduct has been widespread, repeated, and consistent.

## FLSA COLLECTIVE ACTION ALLEGATIONS

49. Plaintiff McGhee brings the First Cause of Action, 29 U.S.C. § 216(b), on behalf of himself and the RAM Collective.

50. Plaintiff Kerin brings the Second Cause of Action, 29 U.S.C. § 216(b), on behalf of herself and the RGMIT Collective.

51. At all relevant times, Plaintiffs and RAM Collective and RGMIT Collective were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. § and 207(a).

52. TOMS King is an employer of Plaintiffs and the members of the putative RAM Collective and RGMIT Collective and is engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. § 207(a).

53. At all relevant times, Plaintiffs and the members of the putative RAM Collective and RGMIT Collective were employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

54. TOMS King has failed to pay Plaintiffs and the members of the putative RAM Collective and RGMIT Collective overtime compensation to which they are entitled under the FLSA.

55. TOMS King has failed to keep accurate records of time worked by Plaintiffs and the members of the putative RAM Collective and RGMIT Collective.

56. Defendant is liable under the FLSA for, among other things, failing to properly compensate Plaintiffs and the members of the putative RAM Collective and RGMIT Collective.

57. Consistent with Defendant's policy and pattern or practice, Plaintiff McGhee and the members of the putative RAM Collective were not paid overtime compensation when they worked beyond forty (40) hours in a workweek.

58. Similarly, Plaintiff Kerin and the members of the putative RGMIT Collective were not paid premium overtime compensation when they worked beyond forty (40) hours in a workweek during training.

59. All of the work that Plaintiffs and the members of the putative RAM Collective and RGMIT Collective performed has been assigned by Defendant, and/or Defendant has been aware of such work.

60. As part of its regular business practice, Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the putative RAM Collective and RGMIT Collective. This policy and pattern or practice includes, but is not limited to:

   (a) willfully failing to pay Plaintiff McGhee and the members of the putative RAM Collective premium overtime wages for hours that they worked in excess of forty (40) hours per workweek;

   (b) willfully failing to pay Plaintiff Kerin and the members of the RGMIT Collective premium overtime wages for hours that they worked in excess of forty (40) hours per workweek during training;

   (c) willfully misclassifying Plaintiffs and the members of the putative RAM Collective and RGMIT Collective as exempt from the overtime protections of the FLSA; and

   (d) willfully failing to record all of the time that its employees, including Plaintiffs and the members of the putative RAM Collective and RGMIT Collective, worked for the benefit of Defendants.

61. Defendant is aware or should have been aware that federal law required it to pay Plaintiffs and the members of the putative RAM Collective and RGMIT Collective overtime compensation for all hours worked in excess of forty (40) in a workweek.

62. Plaintiff McGhee and the members of the putative RAM Collective perform or performed the same primary duties.

63. Plaintiff Kerin and the members of the RGMIT Collective perform or performed the same primary duties.

64. Defendant's unlawful conduct has been widespread, repeated, and consistent.

## PMWA ALLEGATIONS

65. Plaintiffs bring the Third Cause of Action, 43 Pa. Stat. § 333.113, on behalf of themselves.

66. The overtime wage provisions set forth in 43 Pa. Stat. § 333.101 *et seq.* of the PMWA apply to TOMS King.

67. At all relevant times, Defendant has been, and continues to be an "employer" within the meaning of the PMWA.

68. At all relevant times, Defendant has employed, and/or continues to employ, "employee[s]," including Plaintiffs, within the meaning of the PMWA.

69. The PMWA requires an employer, such as Defendant, to compensate all non-exempt employees for all hours worked.

70. The primary duties of Plaintiffs were non-exempt in nature, and included serving customers, breaking down shipments, preparing food, setting up displays, stocking shelves, physically moving merchandise, counting inventory, and cleaning the store.

71. As non-exempt employees Plaintiffs are entitled to be paid overtime compensation for all hours worked in excess of forty (40) in a workweek.

72. TOMS King has failed to pay Plaintiffs overtime compensation to which they are entitled under the PMWA.

73. TOMS King has failed to keep accurate records of time worked by Plaintiffs.

74. Defendant is liable under the PMWA for, among other things, failing to properly compensate Plaintiffs.

75. All of the work that Plaintiffs performed was assigned by Defendant, and/or Defendant was aware of such work.

76. Defendant is aware or should have been aware that Pennsylvania law required it to pay Plaintiffs overtime compensation for all hours worked in excess of forty (40) in a workweek.

77. Defendant's unlawful conduct has been widespread, repeated, and consistent.

### FIRST CAUSE OF ACTION
### Fair Labor Standards Act: Unpaid Overtime Wages
### (Brought on Behalf of Plaintiff McGhee and the RAM Collective)

78. Plaintiffs reallege and incorporate by reference the above allegations.

79. TOMS King has engaged in a widespread policy, pattern or practice of violating the FLSA in regard to Plaintiff McGhee and the members of the putative RAM Collective, as detailed in this Collective Action Complaint.

80. Upon information and belief, TOMS King established labor budgets to cover labor costs for the restaurants in which Plaintiff McGhee and the members of the putative RAM Collective worked. However, TOMS King did not provide sufficient money in the labor budgets to cover all hours needed to complete the necessary non-exempt tasks in each restaurant.

81. TOMS King knew or recklessly disregarded the fact that their underfunding of restaurant labor budgets resulted in Plaintiff McGhee and the members of the putative RAM Collective (who were not paid overtime) working more than forty (40) hours in a workweek without receiving any overtime compensation. This allowed TOMS King to avoid paying additional wages (including overtime) to the non-exempt, restaurant-level employees.

82. Because TOMS King underfunded restaurant labor budgets, which in turn limited the amount of money available to pay non-exempt employees to perform manual and customer service tasks, RAMs were required to – and did – perform these non-exempt tasks.

83. In fact, the performance of non-management work was the primary duty of Plaintiff and the members of the RAM Collective. These primary duties included serving customers, ringing customers up on the cash register, preparing food, working the drive-thru, stocking, counting inventory, and cleaning the restaurant.

84. TOMS King knew, by virtue of the fact that its upper level management employees (as its authorized agents) actually saw Plaintiff McGhee and the members of the RAM Collective primarily perform manual labor and non-exempt duties, that Plaintiff McGhee and other similarly situated RAMs were not performing activities that complied with any FLSA exemption. Inasmuch as TOMS King is a substantial corporate entity aware of its obligations under the FLSA, it acted willfully or recklessly in failing to classify Plaintiff McGhee and other similarly situated RAMs as non-exempt employees.

85. Upon information and belief, and as part of its regular business practices, TOMS King has intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiff McGhee and the members of the putative RAM Collective. This policy and pattern or practice includes but it is not limited to:

    (a) willfully misclassifying Plaintiff McGhee and the members of the putative RAM Collective as exempt from the requirements of the FLSA;

    (b) willfully failing to pay Plaintiff McGhee and the members of the RAM Collective overtime wages for all hours they worked in excess of forty (40) hours per week; and

    (c) willfully failing to provide enough money in its restaurant-level labor budgets.

86. TOMS King's unlawful conduct, as described above, was willful and/or in reckless disregard of the applicable wage and hour laws pursuant to TOMS King's centralized, company-wide policy, pattern, and/or practice of attempting to minimize labor costs by violating the FLSA.

87. As further evidence of its willful or reckless failure to classify Plaintiff McGhee and the members of the RAM Collective as non-exempt employees, TOMS King has uniformly failed to: (a) accurately track or record actual hours worked by Plaintiff McGhee and the members of the putative RAM Collective; and (b) provide Plaintiff McGhee and the members of the putative RAM Collective with a method to accurately record the hours they actually worked.

88. TOMS King did not make a good faith effort to comply with the FLSA with respect to its timekeeping and compensation of Plaintiff McGhee and the members of the putative RAM Collective.

89. TOMS King was or should have been aware that the FLSA required it to pay employees performing non-exempt duties an overtime premium for hours worked in excess of forty (40) per week.

90. TOMS King is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff McGhee and the members of the putative RAM Collective for all hours worked in excess of forty (40) in a workweek.

91. Upon information and belief, there are potentially hundreds of similarly situated current and former RAMs who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. Thus, notice should be sent to the members of the putative RAM Collective, pursuant to 29 U.S.C. § 216(b).

92. The members of the putative RAM Collective are known to TOMS King, are readily identifiable, and can be located through TOMS King's records.

93. Because TOMS King's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255, as it may be further extended or tolled by agreement, equity or operation of law.

94. As a result of TOMS King's willful violations of the FLSA, Plaintiff McGhee and the members of the putative RAM Collective have suffered damages by being denied overtime compensation in accordance with the FLSA, in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as liquidated damages and attorneys' fees, pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**Fair Labor Standards Act – Unpaid Overtime**
**(Brought on behalf of Plaintiff Kerin and the RGMIT Collective)**

95. Plaintiffs reallege and incorporate by reference the above allegations.

96. TOMS King has engaged in a widespread pattern and practice of violating the FLSA during the RGMIT's training period, as described in this Collective Action Complaint.

97. TOMS King had a uniform policy of requiring RGMITs to participate in a several week training program in order to become Restaurant General Managers.

98. TOMS King uniformly classified Kerin and the members of the putative RGMIT Collective as exempt during training and did not pay them overtime compensation, despite being required by TOMS King to work overtime during training.

99. The primary duties of Plaintiff Kerin and the members of the RGMIT Collective were non-exempt in nature, and did not include hiring, firing, disciplining, or directing the work of other employees.

100. The performance of non-management work was the primary duty of Plaintiff Kerin and the members of the RGMIT Collective.

101. During training, the primary duty of Plaintiff Kerin and the members of the RGMIT Collective was learning the operations of TOMS King's restaurants and how to perform the functions of a Restaurant General Manager, and therefore, their duties during training did not fall within any of the exemptions under federal or state overtime laws.

102. Upon information and belief, and as part of its regular business practices, TOMS King has intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiff Kerin and the members of the putative RGMIT Collective. This policy and pattern or practice includes but it is not limited to:

(a) willfully misclassifying Plaintiff Kerin and the members of the putative RGMIT Collective as exempt from the requirements of the FLSA; and
(b) willfully failing to pay Plaintiff Kerin and the members of the putative RGMIT Collective overtime wages for all hours that they worked in excess of forty (40) hours per week during training.

103. TOMS King's unlawful conduct, as described above, was willful and/or in reckless disregard of the applicable wage and hour laws pursuant to TOMS King's centralized, company-wide policy, pattern, and/or practice of attempting to minimize labor costs by violating the FLSA.

104. As further evidence of its willful or reckless failure to classify Plaintiff Kerin and the members of the RGMIT Collective as non-exempt employees, TOMS King has uniformly failed to: (a) accurately track or record actual hours worked by Plaintiff KERIN and the members of the putative RGMIT Collective during their training period; and (b) provide Plaintiff Kerin and the members of the putative RGMIT Collective with a method to accurately record the hours they actually worked.

105. TOMS King did not make a good faith effort to comply with the FLSA with respect

to its timekeeping and compensation of Plaintiff Kerin and the members of the putative RGMIT Collective.

106. TOMS King was or should have been aware that the FLSA required it to pay employees performing non-exempt duties an overtime premium for hours worked in excess of forty (40) per week.

107. TOMS King is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff Kerin and the members of the putative RGMIT Collective for all hours worked in excess of forty (40) in a workweek during their training period.

108. Upon information and belief, there are potentially dozens of similarly situated current and former RGMITs who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. Thus, notice should be sent to the members of the putative RGMIT Collective, pursuant to 29 U.S.C. § 216(b).

109. The members of the putative RGMIT Collective are known to TOMS King, are readily identifiable, and can be located through TOMS King's records.

110. Because TOMS King's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255, as it may be further extended or tolled by agreement, equity or operation of law.

111. As a result of TOMS King's willful violations of the FLSA, Plaintiff Kerin and the members of the putative RGMIT Collective have suffered damages by being denied overtime compensation in accordance with the FLSA, in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as liquidated damages and attorneys' fees, pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION
### Pennsylvania Minimum Wage Act – Unpaid Overtime
### (Brought on behalf of Plaintiffs McGhee and Kerin)

112. Plaintiffs reallege and incorporate by reference the above allegations.

113. Defendant has engaged in a widespread pattern, policy, and practice of violating the PMWA, as detailed in this Collective Action Complaint.

114. TOMS King's unlawful conduct was willful and/or in reckless disregard of the PMWA, and was done pursuant to TOMS King's centralized, company-wide policy, pattern and/or practice of attempting to minimize labor costs by misclassifying Plaintiffs as exempt but requiring them to perform non-exempt duties as their primary duties.

115. At all relevant times, Defendant had a policy and practice of failing and refusing to pay overtime compensation to Plaintiffs for all hours worked in excess of forty (40) in a workweek.

116. As a result of Defendant's failure to pay overtime compensation earned and due to Plaintiffs at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendant has violated the PMWA.

117. As a result of TOMS King's violation of the PMWA, Plaintiffs suffered damages by being denied overtime compensation in accordance with the PMWA, in amounts to be determined at trial, and are entitled to recovery of such amounts, as well as attorneys' fees, pursuant to 43 Pa. Stat. § 333.113.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the members of the putative RAM and RGMIT Collectives, pray for the following relief:

a. Designation of this action as an FLSA collective action on behalf of Plaintiff McGhee and the members of the putative RAM Collective, and prompt issuance of

<blockquote>

notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the RAM Collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Join pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

b. Designation of this action as an FLSA collective action on behalf of Plaintiff Kerin and the members of the putative RGMIT Collective, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the RGMIT Collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Join pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

c. An award of unpaid overtime compensation for all hours worked in excess of forty (40) in a workweek at a rate of time and one-half of the regular rate of pay due under the FLSA and PMWA using the following common methodology for calculating damages: ((Annual Salary ÷ 52) ÷ 40) x Total Number of Overtime Hours Worked x 1.5;

d. An award of liquidated damages under the FLSA and PMWA as a result of TOMS King's willful failure to pay for all hours worked in excess of forty (40) in a workweek at a rate of time and one-half of the regular rate of pay;

e. An award of damages representing TOMS King's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

f. An award of service payments to Plaintiffs;

g. An award of pre-judgment and post-judgment interest;

h. An award of costs and expenses of this action, together with reasonable attorneys'

</blockquote>

and expert fees to Plaintiffs' counsel pursuant to the FLSA;

i. An injunction requiring TOMS King to cease its practice of violating the FLSA in the future;

j. Issuance of a declaratory judgment that the practices complained of in this Collective Action Complaint are unlawful and/or willful under the FLSA; and

k. Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Collective Action Complaint.

Dated: November 12, 2019

*s/ Jason Conway*
Jason Conway (PA 317113)
**CONWAY LEGAL, LLC**
1700 Market Street, Suite 1005
Philadelphia, PA 19103
Telephone: (215) 278-4782
Fax: (215) 278-4807
jconway@conwaylegalpa.com

Daniel C. Levin (PA 80013)
**LEVIN, SEDRAN & BERMAN**
510 Walnut Street
Philadelphia, PA 19106
Telephone: (215) 592-1000
Fax: (215) 592-4663
dlevin@lfsblaw.com

***Attorneys for Plaintiffs and the Putative FLSA Collectives***