# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM McGHEE and CRYSTAL KERIN, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | 2:19-cv-01470-RJC |
| Plaintiffs, | ) | |
| | ) | Judge Robert J. Colville |
| vs. | ) | |
| | ) | |
| TOMS KING, LLC, TOMS King (Services), LLC, TOMS KING (Penn), LLC, | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Robert J. Colville, United States District Judge

Before the Court is the Motion for Conditional Certification and Court-Authorized Notice (ECF No. 47) filed by Plaintiffs William McGhee ("McGhee") and Crystal Kerin ("Kerin") (collectively, "Plaintiffs"). Plaintiffs allege that Defendants ("TOMS King LLC"), TOMS King Services LLC ("TOMS King Services"), and TOMS King (Penn) LLC ("TOMS King Penn") (collectively, "Defendants") misclassified Plaintiffs and all other similarly situated Restaurant Managers ("RMs")[1] and Restaurant General Managers-in-Training ("RGMITs") as exempt employees,[2] and improperly denied Plaintiffs and all other similarly situated employees overtime

---

[1] In their Brief in Support of their Motion, Plaintiffs define "RMs" to include Restaurant Managers-in-Training ("RMITs"). Br. in Supp. 1 n.1, ECF No. 48. Defendants assert that Restaurant Manager-in-Training is a separate employment position within their organization. *Id.* Defendants assert that McGhee is precluded from representing a class of RMITs because he never held the position of RMIT. Br. in Opp'n 22, ECF No. 53. For purposes of this Memorandum Opinion, the Court will not adopt Plaintiffs' definition of "RMs," and the Court shall refer to Restaurant Managers as RMs, and shall separately refer to Restaurant Managers-in-Training as RMITs.

[2] Defendants assert that RMs and RGMITs were properly classified as exempt from the overtime provisions of the FLSA under the executive exemption pursuant to 29 U.S.C. § 213(a)(1) on the basis that, inter alia, their primary duty was management. *See* Br. in Opp'n 1-3, ECF No. 53. In describing the requirements for the applicability of the executive exemption, 29 C.F.R. § 541.100 provides:

(a) The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:

compensation for all hours worked above forty (40) in a workweek in violation of the Fair Labor Standards Act ("FLSA").  Mot. 1-2, ECF No. 47.

The Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over their state-law claim pursuant to 28 U.S.C. § 1367.  Plaintiffs' Motion has been fully briefed, and is ripe for disposition.

## I.      Factual Background & Procedural History

In their operative Second Amended Complaint ("Complaint") (ECF No. 18), Plaintiffs set forth the following relevant allegations with respect to the timeframe relevant herein:

Defendants own and operate approximately 130 "Burger King" restaurants in Illinois, Ohio, North Carolina, Pennsylvania, and Virginia.  Compl. ¶ 75, ECF No. 18.  Defendants employ RMs, RMITs, and RGMITs at their Burger King restaurants.  *Id.* at ¶ 3.  During the relevant timeframe, Defendants maintained strict control, oversight, and discretion over the operation of their restaurants, including their employment practices with respect to Plaintiffs and the members of the putative collectives.  *Id.* at ¶ 77.  RMs, RMITs, and RGMITs were scheduled to work at least fifty (50) hours each workweek, but also routinely worked more hours.  *Id.* at ¶ 79.  Pursuant to a centralized, company-wide policy, pattern, and/or practice, Defendants classified all RMs, RMITs, and RGMITs as exempt from the overtime provisions of the FLSA under the executive

---

(1) Compensated on a salary basis pursuant to § 541.600 . . . ;

(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3) Who customarily and regularly directs the work of two or more other employees; and

(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a); *see also* 29 C.F.R. § 541.102.

exemption.  *Id*. at ¶ 81.  As such, RMs, RMITs, and RGMITs worked in excess of forty (40) hours per workweek, and were not paid overtime compensation for hours worked in excess of forty (40) hours per workweek.  *Id*. at ¶ 79.

Plaintiffs aver that, despite being by classified by Defendants as exempt employees under the FLSA, the primary job duties of Plaintiffs and the members of the putative collectives were manual and/or clerical in nature, and allege that the performance of manual and/or clerical labor occupied the majority of their working hours.  Compl. ¶ 85, ECF No. 18.  More specifically, Plaintiffs allege that RMs, RMITs, and RGMITs spent "the vast majority of their time performing the same duties as non-exempt employees, including serving customers, ringing customers up on the cash register, preparing food, working the drive-[through], stocking, counting inventory, and cleaning the restaurant."  *Id.* at ¶ 3.  Plaintiffs aver that Defendants' purportedly unlawful conduct in allegedly misclassifying RMs, RMITs, and RGMITs as exempt and failing to pay RMs, RMITs, and RGMITs overtime compensation was "willful and/or in reckless disregard of the applicable wage and hour laws," and further aver that such conduct arose out of "[Defendants'] centralized, companywide policy, pattern, and/or practice of attempting to minimize labor costs by violating the FLSA."  *Id.* at ¶¶ 128; 145; *see also* Br. in Supp. 1, ECF No. 48.

In their Motion for Conditional Certification, Plaintiffs seek conditional certification of the following proposed collectives:

> All exempt "Restaurant Managers" and "Restaurant Managers-in-Training" who worked for Defendants in the United States at any time between January 31, 2017 and December 31, 2019 and who worked more than 40 hours during one or more workweeks (the "RM Collective"); and

> All exempt "Restaurant General Managers-in-Training" who worked for Defendants in the United States at any time between January 31, 2017 and January 31, 2019 and who worked more than 40 hours during one or more workweeks (the "RGMIT Collective").

Mot. 1, ECF No. 47.[3]

Plaintiffs filed the Complaint on January 31, 2020 seeking relief under the FLSA on behalf of themselves and all current and former RMs, RMITs, and RGMITs, and also individually seeking relief under the Pennsylvania Minimum Wage Act of 1968. Compl. 1, ECF No. 18. Defendants filed their Answer (ECF No. 30) to the Complaint on March 3, 2020. Following an Initial Case Management Conference in this matter, the parties engaged in the first phase of discovery, which was limited to the issue of conditional certification of Plaintiffs' proposed collectives. *See* Case Management Order ¶ 2, ECF No. 38. Plaintiffs filed their Motion for Conditional Certification on August 21, 2020, along with a Brief in Support (ECF No. 48).[4] Defendants filed a Brief in Opposition (ECF No. 53) to Plaintiffs' Motion and an Appendix of Exhibits (ECF No. 54) on September 18, 2020. Plaintiff filed a Reply (ECF No. 56) on October 2, 2020, and subsequently filed a Notice of Supplemental Authority (ECF No. 57) on November 9, 2020.

## II.    Legal Standard

Section 216(b) of the FLSA permits employees to bring a collective action on behalf of themselves and other "similarly situated" employees against an employer for violation of the FLSA. 29 U.S.C. § 216(b). A collective action depends on the participation of opt-in plaintiffs, and a court must "decide whether those who purport to join the collective action are 'similarly situated' as intended by the statute." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016). Being similarly situated "means that one is subjected to some common

---

[3] In the Complaint, Plaintiffs explain that "Plaintiff McGhee brings this action on behalf of himself and all persons who are or were formerly employed by [Defendants] in the United States during the relevant time period as [RMs], and individuals holding comparable salaried positions with different titles (the '[RM] Collective')," and further explain that "Plaintiff Kerin brings this action on behalf of herself and all persons who are or were formerly employed by [Defendants] in the United States during the relevant time period as RGMITs, and individuals holding comparable salaried positions with different titles (the 'RGMIT Collective')." Compl. ¶¶ 7-8, ECF No. 18.
[4] Plaintiffs also filed twenty-three Exhibits, which are either attached to Plaintiffs' Brief in Support or filed at ECF Nos. 50-51. The Court shall cite to Plaintiffs Exhibits as: "Pls.' Ex. ____, ECF No. ____-____."

employer practice that, if proved, would help demonstrate a violation of the FLSA." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 538 (3d Cir. 2012). In the Third Circuit, courts utilize a "two-step certification process" in determining whether plaintiffs are "similarly situated." *Halle*, 842 F.3d at 224.

Conditional certification, the first step in the two-step process, "requires a named plaintiff to make a 'modest factual showing'—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Halle*, 842 F.3d at 224 (citing *Zavala*, 691 F.3d at 536 n.4). "In other words, Plaintiffs must show three things: (1) an employer policy, (2) that affected the Plaintiffs in a particular way, and (3) that also affected other employees in a similar way." *Dunkel v. Warrior Energy Servs., Inc.*, 304 F.R.D. 193, 200 (W.D. Pa. 2014). "Articulating the differences [between the] two stages of the collective action certification analysis, the Third Circuit has explained that the initial step of conditional certification asks whether similarly situated plaintiffs do, in fact, exist; by contrast, the second stage asks whether the specific plaintiffs who have opted-in are, in fact, similarly situated to the named plaintiffs." *Hodzic v. Fedex Package Sys., Inc.*, No. CV 15-956, 2016 WL 6248078, at *5 (W.D. Pa. Oct. 26, 2016) (citing *Zavala*, 691 F.3d at 536 n.4). "Courts typically rely on the pleadings and affidavits of the parties to determine the suitability of conditional certification." *Rood v. R&R Express, Inc.*, No. 2:17-CV-1223-NR, 2019 WL 5422945, at *2 (W.D. Pa. Oct. 23, 2019) (quoting *Waltz v. Aveda Transp. & Energy Servs., Inc.*, No. 16-469, 2016 WL 7440267, at *2 (M.D. Pa. Dec. 27, 2016)). Given the "modest burden" at the conditional certification stage, "motions for conditional certification are generally successful." *Id.*

"The 'sole consequence' of conditional certification is the dissemination of court-approved notice to potential collective action members," *Halle*, 842 F.3d at 224 (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)), and the Third Circuit has explained that "[c]onditional certification, therefore, is not a true certification, but rather an exercise of a district court's discretionary authority to oversee and facilitate the notice process," *id.* (citing *Zavala*, 691 F.3d at 536). In *Halle*, the Third Circuit further explained:

> While conditional certification is discretionary, the Supreme Court has recognized its importance. A district court's early intervention in the preparation and distribution of notice to potential participants serves legitimate purposes, including avoidance of a multiplicity of duplicative suits and establishing cut-off dates to expedite disposition of the action. [*Hoffman–La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)]. Nevertheless, "[w]hatever significance 'conditional certification' may have in § 216(b) proceedings, it is not tantamount to class certification under Rule 23." *Genesis Healthcare*, 133 S.Ct. at 1532.

*Id*.

At the final certification stage, the second step in the two-step process, the burden is on plaintiffs to establish by a preponderance of the evidence that they satisfy the similarly situated requirement. *Zavala*, 691 F.3d at 537. "Following the notice and discovery period, the defendant typically moves the Court to 'decertify' the collective action on the ground that the opt-in plaintiffs are not similarly situated." *Goodman v. Burlington Coat Factory*, No. CIV.A. 11-4395 JHR, 2012 WL 5944000, at *3 (D.N.J. Nov. 20, 2012). "After discovery, and with the benefit of 'a much thicker record than it had at the notice stage,' a court following this approach then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013) (quoting *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008)). In determining whether plaintiffs are

6

similarly situated at the final certification stage, courts in the Third Circuit utilize an "ad-hoc approach, which considers all the relevant factors and makes a factual determination on a case-by-case basis."  *Zavala*, 691 F.3d at 536.  The United States Court of Appeals for the Third Circuit has explained:

> Relevant factors include (but are not limited to):  whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment.  Plaintiffs may also be found dissimilar based on the existence of individualized defenses.

*Id.* at 536–37.

## III.   Discussion

To state a claim under 29 U.S.C. § 216(b) for overtime, a plaintiff must allege that: "(1) the defendant was 'engaged in commerce' as that phrase is defined by the FLSA; (2) he was an 'employee' as defined by the FLSA; and (3) he worked more than forty hours in a week but was not paid overtime compensation for the hours worked in excess of forty."  *Mell v. GNC Corp.*, No. CIV.A. 10-945, 2010 WL 4668966, at *5 (W.D. Pa. Nov. 9, 2010) (citing *Zhong v. August August Corp.*, 498 F.Supp.2d 625, 628 (S.D.N.Y.2007)).  In moving for conditional certification, Plaintiffs rely on the allegations in the Complaint, the Plaintiffs' deposition testimony, documents produced by Defendants in the first phase of discovery, and the deposition testimony of Defendants' Rule 30(b)(6) Representative, Kimberly Ervin.  *See* Br. in Supp. 1, ECF No. 48.

### A.  Conditional Certification

Initially, because some discovery has taken place in this matter, Defendants seek the application of an intermediate, heightened standard to Plaintiffs' Motion for Conditional Certification as opposed to the "modest factual showing" standard discussed above.  Br. in Opp'n 10-12, ECF No. 53.  While the Court appreciates that some discovery has taken place in this case,

7

such discovery has occurred over a fairly limited period of time and was expressly limited to the issue of conditional certification,[5] which, as set forth above, generally requires a modest factual showing that demonstrates a factual nexus between the manner in which the employer's alleged policy affected the Plaintiffs and the manner in which it affected the proposed collective action members.  *Halle*, 842 F.3d at 224 (citing *Zavala*, 691 F.3d at 536 n.4).  Defendants primarily rely on *Sloane v. Gulf Interstate Field Servs., Inc.*, No. 4:16-CV-01571, 2017 WL 1105236 (M.D. Pa. Mar. 24, 2017) in support of their assertion that the Court should apply an intermediate, heightened standard with respect to conditional certification.  *See* Br. in Opp'n 10-12, ECF No. 53.  The discovery circumstances implicated in *Sloane* are readily distinguishable from those presented in the present action.[6]  "District courts have generally found that a more heightened standard at the conditional certification stage is not appropriate when discovery has not been concluded, no plaintiffs have opted-in, and/or the case is not ready for trial."  *Bowser v. Empyrean Servs., LLC*, 324 F.R.D. 346, 350–51 (W.D. Pa. 2018) (collecting cases).  In the present case, discovery has not concluded, no potential plaintiffs have opted-in, and the case is not trial-ready.  Accordingly, the

---

[5] *See* Case Management Order 1, ECF No. 38.

[6] As aptly explained by the Honorable Cynthia Reed Eddy:

> Assuming without deciding that the Court of Appeals for the Third Circuit would adopt such a standard, courts that have applied this "modest-plus" standard have done so only when all or a substantial portion of meaningful discovery related to whether the parties were similarly situated had been completed by the parties.  *See Swank v. Wal-Mart Stores, Inc.*, No. 2:13-CV-1185, 2018 WL 2684102, at *9 (W.D. Pa. June 5, 2018) (litigation ongoing for five years, both parties deposed multiple witnesses and conducted multiple rounds of written discovery, plaintiffs contacted well over one thousand putative class members and received a significant number of consent to join forms, the only remaining discovery was related to compensation and not the extent to which the collective was similarly situated and the plaintiffs contemporaneously sought Federal Rule of Civil Procedure 23 class certification); *Sloane v. Gulf Interstate Field Servs., Inc.*, No. 4:16-CV-01571, 2017 WL 1105236, at *7-*10 (M.D. Pa. Mar. 24, 2017) (significant discovery exchanged over a three year period as a result of multiple related cases, a significant number of plaintiffs had already opted in, and the plaintiffs contemporaneously sought Rule 23 class certification).

*Fitch v. Giant Eagle Inc.*, No. 2:18-CV-01534-RJC-CRE, 2020 WL 8620076, at *3 (W.D. Pa. Oct. 28, 2020), *report and recommendation adopted*, No. 2:18-CV-01534-RJC-CRE, 2021 WL 704147 (W.D. Pa. Feb. 23, 2021).

Court declines to apply a heightened, intermediate standard to Plaintiffs' Motion for Conditional Certification, and will instead apply the modest factual showing standard discussed above.

In order to most efficiently resolve Plaintiffs' Motion for Conditional Certification, the Court will first address Defendants' argument that McGhee cannot represent a collective of RMITs because he never held that position while employed by Defendants.  Br. in Opp'n 22, ECF No. 53. The Court agrees with this argument.  "It is axiomatic, of course, that to represent such a class or collection of employees under the FLSA, Plaintiff must be able to facially demonstrate that [the plaintiff] is, at minimum, part of that class, and that those to whom notice is to be sent are sufficiently similarly situated to [the plaintiff] (and vice versa) such that [the plaintiff] could fairly represent their experiences with the defendant employer and their interests in such litigation." *Schwartz v. Victory Sec. Agency, L.P.*, No. 2:11-CV-0489, 2012 WL 4506566, at *1 (W.D. Pa. Sept. 28, 2012) (citing 29 U.S.C. § 216(b)).  McGhee seeks to represent the RM collective, which Plaintiffs define to include RMITs.  *See* Br. in Supp. 1 n.1, ECF No. 48; Compl. ¶ 7, ECF No. 18. McGhee testified unequivocally that he did not receive training to be an RM.  ECF No. 54-2 at 43:15-44:8.  It is thus clear that McGhee never held the position of RMIT.  Therefore, it is also clear that he is not a member of a collective of former and current RMITs.  Accordingly, McGhee cannot represent a collective of current and former RMITs, *see Schwartz v. Victory Sec. Agency, L.P.*, 2012 WL 4506566, at *1, and the Court will not include RMITs in the definition of the RM collective.  Accordingly, the Court's analysis below with respect to whether conditional certification is appropriate shall be limited to RMs and RGMITs.

With respect to his employment with Defendants, McGhee testified that he worked as an RM at the Southside Burger King restaurant in Pittsburgh, Pennsylvania from approximately March 2019 to June 2019. Pls.' Ex. B at 26:3-8; 34:8-15, ECF No. 48-2.  McGhee had previously

worked at the North Fayette restaurant as a "Shift Lead," and not as an RM or RGMIT, from July 2018 until early March 2019 and, while so employed, was paid by the hour and received overtime compensation. *Id.* at 35:12-17; 40:25-41:8. McGhee testified that his responsibilities did not change when he became an RM, *id.* at 121:18-122:20, and that, throughout his tenure as an RM, he consistently spent 90% to 95% of his time performing tasks such as preparing food, working the drive-through, stocking, counting inventory, and cleaning the restaurant, *id.* at 219:1-220:21. McGhee further testified that he was paid a salary during his time as an RM, *id.* at 274:18-21, that, on average, he worked a total of sixty (60) to seventy (70) hours per workweek, *id.* at 238:9-11, and that he was not paid overtime compensation for hours worked in excess of forty (40) hours per workweek, *id.* at 219:18-20.

Kerin worked as an RGMIT at the Robinson Burger King restaurant and at a downtown Pittsburgh restaurant from approximately October 2017 to December 2017. Br. in Supp. 3, ECF No. 48. Though she was scheduled to work fifty (50) hours each week of her employment as an RGMIT, Kerin testified that, on average, she worked approximately fifty-five (55) to sixty (60) hours per workweek. Pls.' Ex. C at 66:4-20, ECF No. 48-3. Kerin testified that, due to understaffing issues, she was regularly asked to stay longer than her scheduled shift to wash dishes and/or work the drive-through. *Id.* at 66:11-17. Kerin testified that she spent all of her time as an RGMIT performing tasks such as ringing customers up on the cash register, preparing food, working the drive-through, stocking, counting inventory, and cleaning the restaurant. *Id.* at 83:1-22; *see also* ECF No. 54-4 at 36:34-37:13; 65:9-16. Kerin testified that she was paid a salary during her employment as an RGMIT, *id.* at 32:18-33:12, and that she did not receive overtime compensation for hours worked in excess of forty (40) hours per workweek, *id.* at 84:19-24.

10

Plaintiffs have also submitted evidence which supports a finding that, during the timeframe relevant herein, Defendants universally considered all RMs and RGMITs exempt from the overtime provisions of the FLSA under the executive exemption, and that RMs and RGMITs were paid a salary regardless of the number of hours they worked each week or the location of the restaurant at which they worked.  *See* Br. in Opp'n 1-3, ECF No. 53; Pls.' Ex. A at 122:9-124:23; 128:18-21; 135:14-136:8; 224:12-228:13, ECF No. 50-1.  Accordingly, RMs and RGMITs were not paid overtime compensation for hours worked over forty (40) hours in a workweek.  Pls.' Ex. A at 126:22-127:7; 137:11-14, ECF No. 50-1.  Throughout the timeframe relevant herein, Defendants did not track the hours worked by RMs and RGMITs, *id.* at 219:1-221:14, and did not require RMs or RGMITs to record their hours, *id.* at 222:7-222:12.

During the relevant period, Defendants maintained a uniform job description for RMs, and also expected that RGMITs would, following the completion of their training, undertake the duties listed under Defendants' uniform Restaurant General Manager job description.  *See* Br. in Supp. 7, ECF No. 48; Pls.' Ex. A at 142:16-147:9; 194:2-10, ECF No. 50-1.  Defendants considered the respective primary duties of RMs and RGMITs to be consistent regardless of the size, location, and hours of operation of the restaurant where the RMs and RGMITs worked, the store manager under whom they worked, the RMs' or RGMITs' prior employment experience, and/or the length of their tenure with Defendants.  *Id.*  Defendants' Rule 30(b)(6) Representative Kimberly Ervin testified that the primary duty of RMs was to "be responsible for the operational aspects of the restaurant."  Pls.' Ex. A at 142:16-143:7, ECF No. 50-1.  She further testified that the primary duties of RGMITS during the relevant period was to "learn the functionality of the restaurant's duties and/or responsibilities so that they are able to communicate properly with the crew members" and to "execute efficiently and effectively all of the things . . . that are expected of the

role of an assistant manager or a restaurant general manager." *Id.* at 145:11-146:1.  Ms. Ervin also testified that, throughout the timeframe relevant herein, RMs and RGMITs also prepared food, served food to customers, rung up customers on cash registers, worked the drive-through, stocked, counted inventory, and cleaned restaurants.  *Id.* at 147:21-150:12.

During the relevant period, RMs and RGMITs underwent a training program which took six weeks or less to complete.  Pls.' Ex. A at 155:1-7, ECF No. 50-1.  RMs and RGMITs were also subject to Defendants' uniform policies, procedures, and processes regardless of the size, location, and hours of operation of the restaurant where RMs and RGMITs worked, the store manager under whom they worked, the RMs' or RGMITs' prior employment experience, and/or the length of their tenure with Defendants.  *Id.* at 203:7-205:6; 213:7-214:15; 234:12-235:22.

In order for conditional certification to be granted, Plaintiffs must make a "modest factual showing" of: "(1) an employer policy, (2) that affected the Plaintiffs in a particular way, and (3) that also affected other employees in a similar way."  *Dunkel v. Warrior Energy Servs., Inc.*, 304 F.R.D. 193, 200 (W.D. Pa. 2014).  The policy at issue was Defendants' alleged wrongful denial of overtime compensation to RMs and RGMITs pursuant to the FLSA's executive exemption despite RMs' and RGMITs' primary duties being, purportedly, non-managerial and, thus, non-exempt. *See* Br. in Supp. 11-13, ECF No. 48.  Plaintiffs have submitted evidence which supports a finding that Defendants had a policy of classifying all RMs and RGMITs as exempt employees during the timeframe relevant herein.  Plaintiffs have further submitted evidence which amounts, at least, to a modest factual showing that Plaintiffs performed non-exempt tasks at least 90% of the time during their employment as an RM and an RGMIT, respectively, that they worked well in excess of forty (40) hours per workweek, that they were paid a salary, and that they were not paid overtime for hours worked in excess of forty (40) hours per workweek based upon Defendants' classification

of RMs and RGMITs as exempt employees.  Defendants' policy allegedly affected Plaintiffs by denying them the overtime compensation to which they were allegedly entitled.

With respect to whether Defendants' allegedly unlawful policy affected other employees in a similar way, all RMs and RGMITs were, during the relevant timeframe, universally considered by Defendants to be exempt from the overtime compensation requirements of the FLSA, were paid a salary, and were not paid overtime.  The testimony of Defendants' corporate representative provides that Defendants considered all RMs to be subject to the same job description and purported primary duties regardless of the location of the restaurant at which they worked.[7] Defendant considered all RGMITs to be subject to the same job general description and purported primary duties regardless of the location of the restaurant at which they worked.  RMs and RGMITs were subject to Defendants' various uniform policies, procedures, and processes regardless of the size, location, and hours of operation of the restaurant where RMs and RGMITs worked.

Further, Ms. Ervin testified that, throughout the timeframe relevant herein, RMs and RGMITs also performed non-exempt tasks such as preparing food, serving food to customers, ringing up customers on cash registers, working the drive-through, stocking, counting inventory, and cleaning restaurants.  Each of the Plaintiffs also testified as to having observed, during the course of their employment as an RM and an RGMIT, respectively, other RMs and RGMITs exclusively performing non-exempt tasks as opposed to managerial functions.  *See* Pls.' Ex. B at 38:8-23; 41:9-24, ECF No. 48-2 Pls.' Ex. C at 77:6-78:21, ECF No. 48-3; ECF No. 54-2 at 119:11-

---

[7] *See Costello v. Kohl's Illinois, Inc.*, No. 1:13-CV-1359-GHW, 2014 WL 4377931, at *7 (S.D.N.Y. Sept. 4, 2014) ("Even though a uniform job description is not by itself sufficient for Plaintiffs to meet their burden, Kohl's cannot argue that 'responsibilities of individual Kohl's ASMs varied,' that ASMs' job performance is 'unique,' and that ASMs 'performed their jobs in dramatically different ways'—whether due to a store's location, size, or other factors— preclude collective litigation, while simultaneously classifying each and every ASM identically, without undertaking any individualized analysis.").

20:16; 208:1-21; 210:13-17; ECF No. 54-4 at 39:2-40-24; 78:1-81:8.  The Court further notes that the RM job descriptions submitted by Defendants contemplate long and irregular hours and the performance of both exempt and non-exempt tasks.  *See* ECF No. 54-1 at 10-12 (RM job description providing: (1) Under "Job Purpose" that "[a] Restaurant Manager should be able to work long and/or irregular shifts, including extra shifts, as needed, for proper functioning of the restaurant."; (2) One of the RM position's "Primary Accountabilities" is that an RM "[p]erforms other related duties as assigned or requested."; and (3) That the following are "Physical Requirements" for the RM position: "Occasionally lift, move, carry, and stack cartons up to 50 pounds from various heights to/from shelves"; "Stand and walk for long periods of time (duration of shift)"; "Occasionally climb on stools or ladders and reach for items located on shelves"; "Frequently squat or stoop to reach items on low shelves of off the floor"; "Routinely reach overhead, forward and underneath shelves, counters, tables, and kitchen equipment"; and "Requires frequent motions of bending, wiping, sweeping, mopping, wrapping, and squeezing.").

Contrary to Defendants assertion that there is no record evidence that other RMs and RGMITs similarly performed non-exempt tasks, *see* Br. in Opp'n 2; 21, ECF No. 53,  the Court finds that the above-discussed evidence is sufficient to meet Plaintiffs' modest burden at this stage of the proceedings of setting forth a modest factual showing that demonstrates a factual nexus between the manner in which Defendants' alleged policy of purportedly misclassifying RMs and RGMITs as exempt affected Plaintiffs and the manner in which such a policy affected the proposed collective action members.[8]  Accordingly, the Court finds that Plaintiffs have submitted sufficient evidence at this stage of the proceedings such that conditional certification is warranted.

---

[8] This evidence alone is sufficient to distinguish the present action from *Bramble v. Wal-Mart Stores, Inc.*, No. CIV.A.09-4932, 2011 WL 1389510 (E.D. Pa. Apr. 12, 2011), wherein the United States District Court for the Eastern District of Pennsylvania explained that "Plaintiffs have produced little evidence to substantiate their assertions that their responsibilities, as performed, were similar to those actually performed by other APCs, either at their stores or

Defendants also argue that conditional certification is inappropriate because the Court will necessarily be required to conduct individualized inquiries in determining the primary duties of RMs and RGMITs.  Br. in Opp'n 17-19, ECF No. 53.  This question implicates the merits of Plaintiffs' action and, accordingly, is more appropriately addressed at the second step of the two-step certification process and does not amount to a basis for denial of Plaintiffs' Motion.  *See Bowser*, 324 F.R.D. at 352 ("Whether individualized determinations will predominate and render this case unsuitable for a collective action is more appropriately reviewed during step two of the certification process." (internal citations and quotation marks omitted)); *see also In Re: Enterprise Rent-A-Car Wage & Hour Emp. Practices Litig.*, No. 2:07-CV-01687-JFC, 2010 WL 3447783, at *21 (W.D. Pa. Aug. 13, 2010) ("At the initial assessment stage, before discovery is completed, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations." (quoting *Summa v. Hofstra Univ.*, No. 07-3307, 2008 WL 3852160, at *2 (E.D.N.Y. Aug. 14, 2008)); *Stallard v. Fifth Third Bank*, No. 2:12-CV-01092, 2013 WL 12308493, at *3 (W.D. Pa. Dec. 12, 2013) ("Defendant may turn out to be correct on the merits, but unless [it is] patently clear that Plaintiffs cannot prevail as a matter of law (which is not the case now on the record before the Court), or that the commonality of generally applicable employment and compensation policies necessarily pales in comparison to individualized determinations of liability (and in the Court's estimation it does not, at least at this point), an examination of the merits of the claims and defenses does not occur at this stage of the proceedings." (citing *Hively v. Allis-Chalmers Energy, Inc.*, 2013 WL 5936418, at *7 (W.D. Pa.

---

at other stores nationwide." *Bramble*, 2011 WL 1389510, at *2 (emphasis added).  The Court further notes that, in addition to this evidentiary distinction, *Bramble* also involved "at least 5,588 potential opt-ins from over 3,500 stores throughout the United States." *Bramble*, 2011 WL 1389510, at *1 n.3.  This case involves only 486 potential opt-ins who worked in 133 total stores, *see* Reply 3 n.8, ECF No. 56, across five total states.  *See Hively v. Allis-Chalmers Energy, Inc.*, No. CIV.A. 13-106, 2013 WL 5936418, at *6 (W.D. Pa. Nov. 5, 2013) ("In sum, this Court finds that the differences in terms of class size and quantum of evidence presented distinguish the instant case from *Bramble* and *Moore*.  Those cases involved plaintiffs proffering little evidence to support certifying classes of thousands.").

Nov. 5, 2013))); *Rood v. R&R Express, Inc.*,, 2019 WL 5422945, at *3 (W.D. Pa. Oct. 23, 2019) (rejecting arguments that plaintiffs were properly classified as exempt and that litigating the claims as a collective would require "many fact-specific mini-trials" because "[b]oth arguments 'obscure the scope of the instant inquiry' by asking the Court to prematurely 'engage in a merits-based analysis.'").

Further, Defendants' joint employer argument, *see* Br. in Opp'n 19-21, ECF No. 53, is also more appropriately addressed at the next stage of the two-step certification process.  *See Bowser*, 324 F.R.D. at 352–53 ("That potential opt-in plaintiffs held different jobs, in different departments, at different locations does not preclude conditional certification because all were subject to the same allegedly unlawful policy. . . . Even, 'where a motion for conditional certification involves a potential class of employees that worked for separate, but related, employers, courts have reserved consideration of whether the separate employers are joint employers for a final, stage two determination.'" (internal citations omitted) (quoting *Manning v. Goldbelt Falcon, LLC*, 2010 WL 3906735, at *3 (D.N.J. Sept. 29, 2010))).  The court will address any such fact-specific arguments and merits-based defenses when and if decertification is requested.

Defendants also argue that, should this Court be inclined to grant Plaintiffs' Motion for Conditional Certification, the definition of the collectives should be limited to RMs and RGMITs who worked in the state of Pennsylvania.  *See* Br. in Opp'n 19-21, ECF No. 53.  For the same reasons discussed above with respect to Defendants' argument respecting Plaintiffs' purported failure to produce evidence that other RMs and RGMITs similarly performed non-exempt tasks, the Court rejects this argument and will not limit the collectives to only Pennsylvania-based RMs and RGMITs.[9]

---

[9] The Court notes that, "'[g]iven the FLSA's broad remedial purpose,' Plaintiffs need not adduce evidence from employees located in every state in which [Defendants] operate[] to satisfy their burden of proof for certification of a

Defendants further argue that the start date for eligibility to participate in the collective action provided in the definition of the collectives must be limited to three years prior to this Court's order on Plaintiffs' Motion for Conditional Certification, and that Plaintiffs' proposed start date for eligibility, January 31, 2017, is thus improper.  Br. in Opp'n 21-22, ECF No. 53.  Under the FLSA, a plaintiff's claim to recover unpaid overtime compensation must be commenced within two years of the alleged violation (i.e., the accrual of the cause of action) – unless the violation is willful, in which case the limitations period is enlarged to three years.  29 U.S.C. § 255(a).  A named plaintiff's claim commences "on the date when the complaint is filed," whereas an opt-in plaintiff's claim only commences "on the subsequent date on which [the opt-in plaintiff's] written consent is filed."  29 U.S.C. § 256(a)-(b).

Plaintiffs offer no meaningful response to Defendants' argument respecting the scope of the notice period, and merely note that "[b]ecause subsequent opt-ins may seek to toll the statute of limitations with respect to their claims (for reasons yet unknown), courts routinely reach back further in time to commence the collective period."  Reply 10, ECF No. 56.  Plaintiffs have not formally made a request for equitable tolling, and have set forth no basis, especially considering their use of the "for reasons yet unknown" language, for the same at this time.  Accordingly, the Court will limit the scope of the notice period to three years prior to the date of this Court's Order on Plaintiff's Motion for Conditional Certification.  *See Gervasio v. Wawa Inc.*, No. 17-CV-245 (PGS), 2018 WL 385189, at *5 (D.N.J. Jan. 11, 2018) ("Under the FLSA, a collective action for non-named plaintiffs commences when he or she files a written consent, not when the complaint

---

nationwide collective action."  *Rocha v. Gateway Funding Diversified Mortg. Servs., L.P.*, No. CV 15-482, 2016 WL 3077936, at *8 (E.D. Pa. June 1, 2016) (quoting *Bradford v. Logan's Roadhouse, Inc.*, 137 F. Supp. 3d 1064, 1078 (M.D. Tenn. 2015)).

was filed.  As such, the Court limits the scope of notice to all AGMs who are or were employed by Wawa dating three years back from this Court's order." (citations omitted)).

In light of all of the above, the Court will enter an Order conditionally certifying the following collectives.

> All exempt "Restaurant Managers" who worked for Defendants in the United States at any time between March 29, 2018 and December 31, 2019 and who worked more than 40 hours during one or more workweeks (the "RM Collective"); and

> All exempt "Restaurant General Managers-in-Training" who worked for Defendants in the United States at any time between March 29, 2018 and January 31, 2019 and who worked more than 40 hours during one or more workweeks (the "RGMIT Collective").

## B.  Notice

The Supreme Court has held that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."  *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).  Defendants oppose both the content and procedural elements of the opt-in and notice forms submitted by Plaintiffs.[10]  See Br. in Opp'n 23-25, ECF No. 53.

Plaintiffs request that the Court permit notice to be distributed through first class mail, e-mail, text message, and a case-specific website where RMs and RGMITs may submit a consent to join form electronically.[11]  Br. in Supp. 14, ECF No. 48.  With respect to Plaintiffs' request to

---

[10] The Court will direct the parties to confer in an attempt to resolve their disagreements respecting the content of the notice and consent form.  In any event, Plaintiffs' proposed notice forms require amendment in light of the Court's holdings in this Memorandum Opinion.

[11] Defendants object to Plaintiffs' request regarding the use of a website in the notice and opt-in consent form process.  Br. in Opp'n 24, ECF No. 53.  Plaintiffs seem to assert that Defendants' concerns are misplaced because Plaintiffs do "not seek to disseminate notice through a website – only to permit opt-ins to submit their consent forms electronically using a secure webpage."  Reply 8 n.19, ECF No. 56.  In an abundance of caution, the Court will defer ruling on this issue and direct the parties to confer regarding the use of a website in the notice and opt-in process at the time they discuss the content of the notice in this matter.  To the extent they cannot reach an agreement, they may so advise the Court upon their submission of proposed notice and consent forms.

18

distribute notice via mail, e-mail, and text message, the Court finds these facilitative measures to be appropriate under the circumstances of this case. *See Belt v. P.F. Chang's China Bistro, Inc.*, No. 18 Civ. 3821, 2020 WL 3829026, at *9 (E.D. Pa. Jul. 8, 2020) ("[I]it is appropriate in the modern digital age to distribute notice by mail, email, and text, because although people frequently move and change addresses, they typically retain the same email addresses and phone numbers") (collecting cases).   The court must monitor the distribution of notice to ensure it is "timely, accurate, and informative." *Vasquez v. CDI Corp*., 2020 WL7227271, at *5 (E.D. Pa. Dec. 7, 2020) (citing *Hoffman-La Roche*, 493 U.S. at 172).   The Court will not, however, require Defendants to post the notice at each of its restaurants in a breakroom or other area where similar types of notices are posted. *See Sanchez v. Santander Bank, N.A.*, No. CV175775PGSDEA, 2019 WL 6050738, at *3 (D.N.J. Nov. 15, 2019).

Plaintiffs also request that they be permitted to send a reminder postcard at the half-way mark of the opt-in period to those members of the collectives who have not returned a consent form.  Br. in Supp. 15, ECF No. 48.  The Court finds Plaintiffs' request to send a reminder letter to be reasonable and appropriate in this matter.   Courts in the Third Circuit regularly permit reminder letters. *See Garcia v. Vertical Screen, Inc*., 387 F. Supp. 3d 598, 608 (E.D. Pa. 2019); *Archer v. Defs., Inc.*, No. 18-CV-470, 2018 WL 5962470, at *4 (D. Del. Nov. 14, 2018).  Rather than being redundant, "a reminder letter gives notice to putative plaintiffs who do not receive, open, or view the initial letter; it also helps putative plaintiffs who misplace or forget about the initial letter." *Belt* 2020 WL 3829026, at *9.

Defendants do not object to Plaintiffs' request for an opt-in period of sixty (60) days for the collective members to return the consent form.  Br. in Opp'n 23 n. 11, ECF No. 53. Accordingly, when the Court enters an order approving notice and consent forms in this matter,

such an order will provide for a 60-day opt-in period.  Further, Plaintiffs do not object to Defendants' request for additional time to produce contact information for potential collective members to Plaintiffs.  Reply 8 n.19, ECF No. 56.  As such, the Court will order the production of the requested contact information within twenty-one (21) days of this Memorandum Opinion.

As set forth in Footnote 10, the parties are directed to meet and confer regarding the contents of the notice to be provided to potential collective members.  Further, the parties shall meet and confer with respect to any schedule for Phase II discovery and shall, as directed by this Court's Order accompanying this Memorandum Opinion, file a joint proposed case management order, which shall also include a proposed briefing schedule for final certification of the FLSA collectives.

## IV.    Conclusion

For the reasons discussed above, the Court will grant Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice (ECF No. 47) in part, as set forth above.  An appropriate Order of Court follows.


                                        BY THE COURT:


                                        s/*Robert J. Colville*_____
                                        Robert J. Colville
                                        United States District Judge


DATED: March 29, 2021

cc/ecf: All counsel of record